**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **HOFFPAUIR, INC., JIM HOFFPAUIR,** | § | |
| **INC., LEE HOFFPAUIR, INC., AND** | § | |
| **RANCHFUND REINSURANCE, LTD.** | § | |
| | § | |
| **v.** | § | **CAUSE NO. A-12-CA-263 LY** |
| | § | |
| **INTERSTATE NATIONAL DEALER** | § | |
| **SERVICES, INC.** | § | |

**REPORT AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

TO:    THE HONORABLE LEE YEAKEL
       UNITED STATES DISTRICT JUDGE

Before the Court are:  Defendant Interstate National Dealer Services, Inc.'s Motion to Dismiss (Clerk's Doc. Nos. 5);  Plaintiffs' Response to the Motion to Dismiss (Clerk's Doc. No. 11); and Defendant's Reply to Plaintiff's Response (Clerk's Doc. No. 15).

The District Court referred the above-motion to the undersigned Magistrate Judge for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72, and Rule 1(d) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas, Local Rules for the Assignment of Duties to United States Magistrate Judges.  After reviewing the parties' briefs, relevant case law, as well as the entire case file, the undersigned issues the following Report and Recommendation to the District Court.

**I. Factual Background**

Plaintiffs Hoffpauir, Inc., Jim Hoffpauir, Inc. and Lee Hoffpauir, Inc. ("Plaintiffs") are Texas corporations which operate several vehicle dealerships in Burnet and Lampasas Counties, Texas.. In conjunction with their vehicle sales, Plaintiffs also offer their customers vehicle service contracts

(VSCs), also known as extended service contracts.  VSCs are contracts that cover the cost of repairs after the original manufacturer's warranty on a vehicle expires. Defendant Interstate National Dealer Services, Inc. ("Interstate") is an administrator of VSCs and has its principal place of business in Georgia. In a typical transaction, revenue generated by a VSC sale is transmitted to an account managed by an administrator, such as Interstate.  A certain portion of the revenue, named an "administrative fee," is kept by the administrator, and the rest of the premium generated by the sale is held in a custodial reinsurance account to insure payment for services that may be required to be provided pursuant to the VSC.  Upon the expiration of the VSC, any portion remaining is released to the reinsurance company.

On January 24, 2006, Plaintiffs each entered into separate "Producer Agreements" with Interstate which contain identical terms and language.  Each Producer Agreement contained language which provided for the formation of a captive reinsurance company in the Turks & Caicos Islands. Ultimately, Ranchfund Reinsurance, Ltd., ("Ranchfund") was formed and served as the captive reinsurance company contemplated by the Agreements.  On May 19, 2006, Plaintiffs entered into separate Reinsurance Agreements with Ranchfund and Interstate which Plaintiffs contend governs "the reinsurance funds held from the VSC sales, payments for services related thereto, and the parties' respective rights and obligations related to such funds."  Plaintiffs' Response at ¶11.

On March 30, 2010, Interstate notified Plaintiffs that it had "retroceded" funds from the Ranchfund on the basis that Plaintiffs were not producing an average of twenty VSCs per month as was required by the Producer Agreements.  Interstate contends that the clear terms of the Producer Agreements gave it the authority to retrocede the Ranchfund funds at issue.  Plaintiffs disagree and contend that Interstate misappropriated approximately $401,494.41 in funds subject to the Parties'

2

Agreements and has failed to refund such amount despite written demand.  Plaintiffs contend that

the Reinsurance Agreements govern the funds in the reinsurance accounts, not the Producer

Agreements, and that Interstate took such funds in violation of those Reinsurance Agreements.

## II.  Procedural Background

After Plaintiffs notified Interstate of their intent to file a lawsuit against Interstate, Interstate

"beat the Plaintiffs to the courthouse" and filed a declaratory judgment action against Plaintiffs in

New York state court on March 19, 2012.  See *Interstate National Dealer Services, Inc. v. Lee*

*Hoffpauir, Inc., et al.*, No. 12-003474 (N.Y. Sup. Ct.- Nassau Cnty.).  Seven days later, Plaintiffs

filed their own lawsuit in this court alleging breach of contract, breach of fiduciary duty, conversion

and money had and received.  On April 26, 2012, Plaintiffs removed the New York State action to

the Eastern District of New York, where it is currently pending.  See  *Interstate National Dealer*

*Services, Inc. v. Lee Hoffpauir, Inc., et al.*, 2:12-cv-02058-JFB-GRB ("New York Action").

On May 4, 2012, Interstate filed the instant Motion to Dismiss pursuant to Rule 12(b)(6)

arguing that Plaintiffs's claims fail as a matter of law.[1]  On July 25, 2012, the District Court referred

the Motion to Dismiss to the undersigned Magistrate Judge for a Report and Recommendation

pursuant to 28 U.S.C. § 636(b)(1)(B).  Shortly thereafter, the Parties notified the Court that a

settlement conference was scheduled in the New York Action, *see* Scheduling Order, Doc. No. 13

in 2:12-cv-02058-JFB-GRB, and requested that the Court postpone ruling on the Motion to Dismiss

in light of the possibility of settlement of the two cases. The settlement conference was finally held

on November 12, 2012, and was unsuccessful in resolving the dispute.

---

[1]Interstate has filed an identical Motion to Dismiss Hoffpauirs' *Counterclaims* in the New
York Action, That motion is pending before the Eastern District of New York.  See Doc. No. 12 in
2:12-cv-02058-JFB-GRB.

### III.  STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) allows a party to move to dismiss an action for failure to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6).  In deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim, "[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the [nonmovant]." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (internal quotation marks omitted), *cert. denied*, 552 U.S. 1182 (2008).  To survive the motion, a nonmovant must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  "The court's task is to determine whether the plaintiff has stated a legally cognizable claim that is plausible, not to evaluate the plaintiff's likelihood of success." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).  "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555.  "A claim has facial plausibility when the [nonmovant] pleads factual content that allows the court to draw the reasonable inference that the [movant] is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed.R.Civ.P. 8(a)(2), "in order to give the defendant fair notice of what the claim is and the grounds upon which it rests. *Twombly*, 550 U.S. at 555 (internal quotation marks and ellipsis omitted).  Although a complaint need not contain detailed factual allegations, the "showing" contemplated by Rule 8

4

requires the plaintiff to do more than simply allege legal conclusions or recite the elements of a cause

of action. See *Id.* at 555 & n. 3. Thus, while a court must accept all of the factual allegations in the

complaint as true, it need not credit bare legal conclusions that are unsupported by any factual

underpinnings. See *Iqbal*, 556 U.S. at 679 ("While legal conclusions can provide the framework of

a complaint, they must be supported by factual allegations").

## IV.  ANALYSIS

### A.  Plaintiffs' Breach of Contract Claim

In a diversity case such as this one, the court must apply state substantive law.  *Erie R.R. Co.*

*v. Tompkins*, 304 U.S. 64, 78 (1938); *Ashland Chem. Inc. v. Barco Inc.*, 123 F.3d 261, 265 (5th Cir.

1997).  To prevail on a breach of contract claim under Texas law, the plaintiff must establish the

following elements: (1) the existence of a valid contract; (2) performance or tendered performance

by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the

plaintiff as a result of the breach.  *Lewis v. Bank of Am. NA*, 343 F.3d 540, 544–45 (5th Cir. 2003),

*cert. denied*, 540 U.S. 1213 (2004);  *Wright v. Christian & Smith*, 950 S.W.2d 411, 412 (Tex. App.–

Houston [1st Dist.] 1997, no writ).

Plaintiffs' breach of contract claim alleges that Interstate violated its contracts with Plaintiffs

by "misappropriating funds from accounts it managed for Plaintiffs in violation of its obligations

under those contracts in the amount of at least $401,494.41." Plaintiffs' Complaint at ¶ 15.  Interstate

argues that Plaintiffs have not alleged sufficient facts to show a breach of contract because Plaintiffs

(1) have "failed to identify a specific provision of any particular contract that was violated" and

(2) "Interstate had the right under the terms of the Producer Agreements to retrocede the funds."

Interstate's Motion to Dismiss at p. 6.  In support of its argument, Interstate has filed a "Supplement"

to its Motion to Dismiss, which provides the Court with copies of the Producer Agreements and an unsigned letter allegedly sent to Plaintiffs notifying them that Interstate had retroceded the funds. See Docket No. 10. Interestingly, Interstate has not provided the Court with copies of the Reinsurance Agreements, which Plaintiffs argue do not authorize removal of such funds in the manner undertaken in this situation.

In response to Interstate's arguments, Plaintiffs contend that they cannot cite to a "specific provision" of the Reinsurance Agreement because "the nature of the Plaintiffs' claim is that [Interstate] took an action without any right to do so." Plaintiffs' Response at p. 6. In addition, Plaintiffs claim that they do not have access to the complete Reinsurance Agreements and that Interstate has failed to produce complete copies of those agreements. Finally, Plaintiffs argue that the Court should not consider any of the documents attached to Interstate's Supplement since the attachments are not part of the pleadings and the Court should only consider the pleadings when ruling on a Rule 12(b)(6) Motion.

Plaintiffs are correct that courts generally do not look beyond the face of the pleadings when determining whether the plaintiff has stated a claim under Rule 12(b)(6). *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999), *cert. denied*, 530 U.S. 1229 (2000). A contract that is attached to a defendant's motion to dismiss can be considered if it was referred to in the complaint and is central to the plaintiff's claims. *In Re Katrina Canal Breaches Litig*., 495 F.3d 191, 205 (5th Cir. 2007), (quoting *Causey v. Sewell Cadillac–Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004); *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5 th Cir. 2000))*, cert. denied*, 552 U.S. 1182 (2002). Here, Interstate has attached the Producer Agreements to the motion to dismiss, and thus the Court in its discretion could include them in its consideration of the motion. In the end,

6

however, as is explained in more detail below, even if the Producer Agreements were considered Interstate has not shown that it is entitled to a dismissal of this case.

As Plaintiffs point out, they do not rely solely on the Producer Agreements for their claim. The Complaint also references the Reinsurance Agreements between the Parties (which Interstate chose *not* to attach to its motion to dismiss).  Plaintiffs contend that the Reinsurance Agreements "are of equal, if not greater, importance to Plaintiffs' claims."  Plaintiffs' Response at p. 5. Plaintiffs' breach of contract claim alleges:

> Plaintiffs and Defendants were parties to valid and enforceable contracts that governed their rights and obligations regarding funds generated from sales of VSCs and held in connection with the VSCs.  Defendant misappropriated funds from accounts it managed for Plaintiffs in violation of its obligations under those contracts in the amount of at least $401,494.41. Such actions constitute a breach by Defendants of its contracts with Plaintiffs, and caused Plaintiffs' damages for which they seek recovery herein.

Plaintiffs' Complaint at ¶ 15.  Plaintiffs' Complaint also alleges that the Reinsurance Agreements govern the reinsurance funds held from the VSC sales, payment for those services related thereto, and the parties' respective rights and obligations related to such funds.  The Court finds this complies with Rule 8's pleading requirements and alleges "enough facts to state a claim to relief that is plausible on its face."  Accordingly, Defendants' Rule 12(b)(6) Motion to Dismiss Plaintiffs' breach of contract claim should be denied.

**B.   Plaintiffs' Conversion and Breach of Fiduciary Duty Claims**

Interstate next argues that Plaintiffs' claims for conversion and breach of fiduciary duty are duplicative of their breach of contract claim and are barred under the economic loss rule.

Under Texas law, the economic loss rule precludes recovery in tort when the loss complained of is the subject matter of a contract between the parties. See *Memorial Hermann Healthcare System*

7

*Inc. v. Eurocopter Deutschland, GMBH*, 524 F.3d 676, 678 (5th Cir. 2008); *Southwestern Bell Tele.*

*Co. v. DeLanney*, 809 S.W.2d 493, 494 (Tex. 1991).  Stated differently, a claim in tort will not lie

when the only injury alleged is for economic damages that are caused by the failure to perform under

a contract.  *Sterling Chems, Inc. v. Texaco, Inc.*, 259 S.W.3d 793, 796–98 (Tex. App.— Hous. [1st

Dist.] 2007, pet. denied).  The economic loss rule has been applied to preclude breach of fiduciary

duty and conversion claims where a plaintiff has been shown to have no damages independent of

those suffered as a result of an alleged breach of contract.

While the Court may find at a later date that the economic loss rule applies in the instant  case

to bar Plaintiffs' tort claims, because the Court has yet to evaluate all of the Parties' contracts in this

case, the Court is unable to so find at this time.  There is a possibility that Plaintiffs may be able to

show under certain facts that a fiduciary relationship existed between the Parties in this case.

Accordingly, Defendant's Motion to Dismiss Plaintiffs' breach of fiduciary duty and conversion

claims should be denied.

**C.      Plaintiffs' Claim for Money Had and Received**

In Count Four of their Complaint, Plaintiffs contend that "Defendant is liable to Plaintiffs

based upon money had and received because Defendant received and took funds governed and

controlled by the terms of the Reinsurance Agreements that in equity and good conscience belong

to Plaintiffs."  Plaintiffs' Complaint at ¶ 22.  Interstate argues that Plaintiffs' claim for money had

and received must be dismissed because such a cause of action is unavailable where there is an

express contract between the parties.

In general, when a valid, express contract covers the subject matter of the parties' dispute,

there can be no recovery under a quasi-contract theory such as a claim for money had and received.

8

*Prime Income Asset Management Inc. v. One Dallas Centre Associates LP*, 2009 WL 5102848 at

* 2 (5th Cir. Dec. 23, 2009) (citing *Fortune Prod. Co. v. Conoco, Inc.*, 52 S.W.3d 671 (Tex. 2000);

*TransAm. Natural Gas Corp. v. Finkelstein*, 933 S.W.2d 591, 600 (Tex. App.-San Antonio 1996,

writ denied); *Lone Star Steel Co. v. Scott*, 759 S.W.2d 144, 154 (Tex. App. Texarkana 1988, writ

denied)).  However, because the Court has yet to evaluate all of the Parties' contracts in this case,

the Court is unable to hold at this time that Plaintiffs' claim for money had and received is barred.

Accordingly, Defendant's Motion to Dismiss this claim should be denied.

## V.  RECOMMENDATION

Based upon the foregoing, the undersigned Magistrate Court **RECOMMENDS** that the

District Court **DENY** Defendant Interstate National Dealer Services, Inc.'s Motion to Dismiss

(Clerk's Doc.  No. 5) in its entirety.

## VI.  WARNINGS

The parties may file objections to this Report and Recommendation.  A party filing

objections must specifically identify those findings or recommendations to which objections are

being made.  The District Court need not consider frivolous, conclusive, or general objections.  *See*

*Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations

contained in this Report within fourteen (14) days after the party is served with a copy of the Report

shall bar that party from *de novo* review by the District Court of the proposed findings and

recommendations in the Report and, except upon grounds of plain error, shall bar the party from

appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the

District Court.  *See* 28 U.S.C. § 636(b)(1)(c); *Thomas v. Arn*, 474 U.S. 140, 150-53, 106 S. Ct. 466,

472-74 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

To the extent that a party has not been served by the Clerk with this Report & Recommendation electronically pursuant to the CM/ECF procedures of this District, the Clerk is directed to mail such party a copy of this Report and Recommendation by certified mail, return receipt requested.

SIGNED this 24th day of January, 2013.

_____

ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE